1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   MYRON A. PAYNE,                          No.  2:12-cv-0243 JAM DAD P

12             Plaintiff,

13        v.                                  FINDINGS AND RECOMMENDATIONS

14   MATTHEW CATE, et al.,

15             Defendants.

16

17        Plaintiff is a state prisoner proceeding pro se with a civil rights action.  This matter is

18   before the court on a motion for summary judgment brought pursuant to Rule 56 of the Federal

19   Rules of Civil Procedure on behalf of defendants Peddicord, Griffith, Vanderville, Armoskus,

20   Brackett, St. Andre, Fischer, Kissel, Perez, Cochrane, Kots, and Runnels.  Plaintiff has filed an

21   opposition to the motion.  Defendants have not filed a reply.

22        For the reasons discussed below, the undersigned will recommend that defendants' motion

23   for summary judgment be granted.

24                              **BACKGROUND**

25        Plaintiff is proceeding on a first amended complaint against defendants Peddicord,

26   Griffith, Vanderville, Armoskus, Brackett, St. Andre, Fischer, Kissel, Perez, Cochrane, Kots, and

27   Runnels.  Therein, plaintiff alleges that defendants improperly validated him as a gang member of

28   the Black Guerilla Family ("BGF") while he was incarcerated at High Desert State Prison

1

("HDSP").  Specifically, plaintiff takes issue with his initial placement in administrative

segregation, the process employed and the evidence relied upon to validate him as a BGF gang

member, and his subsequent gang-validation review.  Plaintiff claims that the defendants violated

his right to due process and equal protection.  In terms of relief, plaintiff requests damages,

declaratory relief, and injunctive relief.  (Am. Compl. 2-39.)

### SUMMARY JUDGMENT STANDARDS UNDER RULE 56

Summary judgment is appropriate when the moving party "shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R.

Civ. P. 56(a).

Under summary judgment practice, the moving party "initially bears the burden of

proving the absence of a genuine issue of material fact."  In re Oracle Corp. Securities Litigation,

627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).

The moving party may accomplish this by "citing to particular parts of materials in the record,

including depositions, documents, electronically store information, affidavits or declarations,

stipulations (including those made for purposes of the motion only), admission, interrogatory

answers, or other materials" or by showing that such materials "do not establish the absence or

presence of a genuine dispute, or that the adverse party cannot produce admissible evidence to

support the fact."  Fed. R. Civ. P. 56(c)(1)(A), (B).

When the non-moving party bears the burden of proof at trial, "the moving party need

only prove that there is an absence of evidence to support the nonmoving party's case."  Oracle

Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325.).  See also Fed. R. Civ. P. 56(c)(1)(B).

Indeed, summary judgment should be entered, after adequate time for discovery and upon motion,

against a party who fails to make a showing sufficient to establish the existence of an element

essential to that party's case, and on which that party will bear the burden of proof at trial.  See

Celotex, 477 U.S. at 322.  "[A] complete failure of proof concerning an essential element of the

nonmoving party's case necessarily renders all other facts immaterial."  Id.  In such a

circumstance, summary judgment should be granted, "so long as whatever is before the district

court demonstrates that the standard for entry of summary judgment, . . ., is satisfied."  Id. at 323.

1    If the moving party meets its initial responsibility, the burden then shifts to the opposing

2    party to establish that a genuine issue as to any material fact actually does exist.  See Matsushita

3    Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the

4    existence of this factual dispute, the opposing party may not rely upon the allegations or denials

5    of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or

6    admissible discovery material, in support of its contention that the dispute exists.  See Fed. R.

7    Civ. P. 56(c)(1); Matsushita, 475 U.S. at 586 n.11.  The opposing party must demonstrate that the

8    fact in contention is material, i.e., a fact that might affect the outcome of the suit under the

9    governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv.,

10   Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is

11   genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving

12   party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

13   In the endeavor to establish the existence of a factual dispute, the opposing party need not

14   establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual

15   dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

16   trial." T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary judgment is to 'pierce

17   the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"

18   Matsushita, 475 U.S. at 587 (citations omitted).

19   "In evaluating the evidence to determine whether there is a genuine issue of fact," the

20   court draws "all reasonable inferences supported by the evidence in favor of the non-moving

21   party." Walls v. Central Costa County Transit Authority, 653 F.3d 963, 966 (9th Cir. 2011).  It is

22   the opposing party's obligation to produce a factual predicate from which the inference may be

23   drawn.  See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985),

24   aff'd, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing

25   party "must do more than simply show that there is some metaphysical doubt as to the material

26   facts . . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the

27   nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation

28   omitted).

1    **OTHER APPLICABLE LEGAL STANDARDS**

2    I. Civil Rights Act Pursuant to 42 U.S.C. § 1983

3    The Civil Rights Act under which this action was filed provides as follows:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.  The statute requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff.  See Monell v. Department of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976).  "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of  § 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made."  Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

Moreover, supervisory personnel are generally not liable under § 1983 for the actions of their employees under a theory of respondeat superior and, therefore, when a named defendant holds a supervisorial position, the causal link between him and the claimed constitutional violation must be specifically alleged.  See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978).  Vague and conclusory allegations concerning the involvement of official personnel in civil rights violations are not sufficient.  See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982).

II. The Fourteenth Amendment and Due Process Protections for Prisoners

When placement in administrative segregation impairs an inmate's liberty interest, the Due Process Clause requires prison officials to provide the inmate with "some notice of the charges against him and an opportunity to present his views to the prison official charged with deciding whether to transfer him to administrative segregation."  Bruce v. Ylst, 351 F.3d 1283, 1287 (9th Cir. 2003) (quoting Toussaint v. McCarthy, 801 F.2d 1080, 1099 (9th Cir. 1986), overruled on other grounds by Sandin v. Connor, 515 U.S. 471 (1995)).

/////

4

1    In addition to the notice and opportunity for presentation requirements, due process

2    requires prison officials to have an evidentiary basis for their decision to place an inmate in

3    segregation for administrative reasons.  See Superintendent v. Hill, 472 U.S. 445, 455 (1985);

4    Toussaint, 801 F.2d at 1104–05.  The evidentiary basis is satisfied if there is "some evidence"

5    from which a court can deduce an administrative tribunal's conclusion.  Hill, 472 U.S. at 455;

6    Toussaint, 801 F.2d at 1105.  The evidence relied upon must have "some indicia of reliability."

7    See Madrid v. Gomez, 889 F. Supp. 1146, 1273-74 (N.D. Cal. 1995).  This "some evidence" test

8    applies to an inmate's placement in SHU for gang affiliation.  Castro v. Terhune, 712 F.3d 1304,

9    1307 (9th Cir. 2013) (citing Bruce, 351 F.3d at 1287).

10    Finally, due process requires that prison officials engage in some sort of periodic review

11    of an inmate's confinement in segregation.  See Hewitt v. Helms, 459 U.S. 460, 477 n.9 (1983),

12    abrogated in part on other grounds by Sandin, 515 U.S. 472; Toussaint, 801 F.2d at 1101.  These

13    periodic reviews must be more than "meaningless gestures" to satisfy due process.  See Toussaint

14    v. Rowland, 711 F. Supp. 536, 540 n.11 (N.D. Cal. 1989).

15    **DEFENDANTS' STATEMENT OF UNDISPUTED FACTS AND EVIDENCE**

16    Defense counsel has submitted a statement of undisputed facts supported by declarations

17    signed under penalty of perjury by defendants St. Andre, Brackett, Vanderville, Runnels, Fischer,

18    and Kots.  That statement of undisputed facts is also supported by citations to plaintiff's amended

19    complaint, plaintiff's deposition testimony, and plaintiff's inmate appeal concerning his gang

20    validation and prison officials' responses thereto.  The evidence submitted by the defendants in

21    support of their pending motion for summary judgment establishes the following.

22    1.  Plaintiff Payne is a California inmate serving a life sentence.  (Am. Compl. at 7.)

23    2.  In 2008, plaintiff was incarcerated at HDSP.  (Am. Compl. at 7.)

24    3.  In 2008, defendant St. Andre was a Correctional Lieutenant and Institutional Gang

25    Investigator at HDSP.  (St. Andre Decl.)

26    4.  In 2008, defendant Brackett was a Correctional Officer and Assistant Institutional Gang

27    Investigator at HDSP.  (Brackett Decl.)\

28    /////

5

5. In June 2008, defendant Brackett began an investigation into plaintiff's ties to the BGF. (Brackett Decl.)

6. On June 3, 2008, defendant Brackett searched plaintiff's cell and retrieved written material that indicated plaintiff was associated with the Black Panther Party ("BPP"). The BPP stands on the same platform as the BGF. (Brackett Decl., St. Andre Decl.)

7. On June 4, 2008, defendant Brackett conducted a search of plaintiff's property that was being held in administrative segregation, which revealed the following items: the name, CDCR number, and AKA of a validated member of the BGF in an address book; a photograph of a validated BGF member with a dated handwritten letter addressed to plaintiff on the back of the photograph; several printed items supporting the BGF; and the symbol of George Jackson, founder and supreme commander of the BGF printed on a booklet. (Brackett Decl., St. Andre Decl.)

8. On June 13, 2008, defendant Brackett gave plaintiff notice that he would be placed in administrative segregation pending the completion of an investigation into his association with the BGF prison gang. (Brackett Decl.)

9. On June 19, 2008, an Institutional Classification Committee ("ICC") at HDSP met for the purposes of an initial administrative segregation review. (Vanderville Decl., Ex. A, Am. Compl.)

10. Defendant Vanderville was the recorder for the ICC, defendant Armoskus was the Chairperson, and defendants Peddicord, Cochrane, and Dr. Jenesky were committee members. (Vanderville Decl.)

11. The recorder is responsible for documenting everything that occurs during the hearing. (Vanderville Decl.)

12. Plaintiff communicated with the ICC on June 19, 2008, but did not submit written documentation. (Vanderville Decl, Ex. A, Runnels Decl., Ex. A.)

13. The ICC determined that plaintiff would remain in administrative segregation pending the outcome of the gang investigation. (Vanderville Decl., Ex. A, Am. Compl.)

/////

14. Defendant Brackett drafted general chronos, CDCR 128-Bs, describing each item recovered in plaintiff's property offering explanations as to how the items/documents tied plaintiff to the BGF prison gang.  (Brackett Decl., Ex. A, St. Andre Decl.)

15. Defendants St. Andre and Brackett reviewed all of the evidence collected by defendant Brackett and concluded that plaintiff met the criteria to be validated as an associate of the BGF and signed a 128B chrono finding as such.  (Brackett Decl., Ex. B, St. Andre Decl.)

16. On July 24, 2008, defendant Brackett served plaintiff with a Validation Interview Notification and Disclosure Form to inform him that an investigation had been completed into his suspected association with the BGF prison gang.  (Brackett Decl., Ex. C, St. Andre Decl., Am. Compl.)

17. Additionally, defendant Brackett presented plaintiff with copies of the source items recovered during the investigation.  (Brackett Decl., Am. Compl.)

18. Plaintiff signed the Notification and Disclosure Form and chose to utilize his twenty-four hour preparation period prior to being interviewed by correctional staff.  (Brackett Decl., Ex. C.)

19. On July 25, 2008, defendant Brackett reported to plaintiff's facility to interview him. Plaintiff did not wish to provide any verbal statements but did provide a seven-page rebuttal statement at that time.  (Brackett Decl., Ex. D, St. Andre Decl., Am. Compl.)

20. Plaintiff's rebuttal statement was reviewed and considered by defendants St. Andre and Brackett and was permanently attached to plaintiff's gang validation package for future review and consideration.  (Brackett Decl., St. Andre Decl.)

21. The entire package was forwarded to the Office of Correctional Safety ("OCS") for review, consideration, and a final decision.  (St. Andre Decl., Brackett Decl., Am. Compl.)

22. The Special Services Unit of OCS consisting of defendant Fisher, defendant Kissel, and R. Marquez reviewed the package, including plaintiff's rebuttal statement, and determined that all source items submitted for consideration met the validation requirements.  (Fisher Decl., Exs. B-F.)

/////

7

23. On August 27, 2008, plaintiff was validated as an associate of the BGF prison gang. (Fisher Decl., Ex. A, Am. Compl.)

24. On October 2, 2008, plaintiff appeared before the ICC for a "subsequent review." (Kots Decl., Ex. A, St. Andre Decl., Am. Compl.)

25. The ICC consisted of defendant Kots, as the recorder, defendant Perez, as the Chairperson, and defendant Peddicord, defendant Cochrane, and Dr. Murray as committee members. (Kots Decl., Ex. A.)

26. The ICC reviewed Forms 812A and 128B and noted that plaintiff had been validated as an associate of the BGF prison gang. (Kots Decl., Ex. A.)

27. A CDCR 812A is a Notice of Critical Information – Prison Gang Identification Form and the 128B in this circumstance is the gang validation package, including plaintiff's rebuttal statement. (Kots Decl., St. Andre Decl.)

28. The ICC elected to retain plaintiff in administrative segregation pending his endorsement for a transfer to California State Prison – Corcoran's Security Housing Unit ("SHU").

29. Plaintiff indicated his understanding of the ICC's actions and was given notice of his rights to appeal. (Kots Decl., Ex. A.)

30. Plaintiff was transferred to the SHU and received regular ICC reviews of his housing status. (Hixson Decl., Pl.'s Dep. at 60:17-61:5, Am. Compl.)

31. Plaintiff challenged his gang validation and SHU placement through the inmate appeals process. (Clark Decl., Ex. A.)

**ANALYSIS**

Before reaching the merits of plaintiff's claims, the court will first address the question of jurisdiction. This court previously ordered the parties to file supplemental briefs addressing the issue of whether this action could proceed as a civil rights action in light of the Ninth Circuit Court of Appeals recent decision in Nettles v. Grounds, 788 F.3d 992 (9th Cir. 2015). Both parties filed supplemental briefs attempting to address the question. After thoroughly reviewing plaintiff's opposition to defendants' motion for summary judgment, however, it appears that any question regarding the court's jurisdiction has now been rendered moot. Plaintiff has been

1    released from the SHU and therefore his success on his claims in this action would not appear to

2    result in any "quantum change in the level of custody." Nettles, 788 F.3d at 1006. Accordingly,

3    this court need not decide the question of whether Nettles requires a gang-validated prisoner

4    seeking immediate release from SHU to the general population to file a petition for writ of habeas

5    corpus in order to obtain such relief. In light of the fact that plaintiff has already been released

6    from the SHU, this case may proceed as a civil rights action.

7         There are three separate stages of plaintiff's gang validation process at issue here:

8    plaintiff's initial placement in administrative segregation, his actual gang validation proceedings,

9    and both his "subsequent review" and the periodic review of his SHU confinement. The

10   undersigned will address each of these stages below. The undersigned will also address

11   plaintiff's equal protection claims, his official capacity claims, and his claims brought pursuant to

12   the settlement agreement in the case of Castillo v. Terhune, No. C 94-2847 MJJ JCS (N.D. Cal.

13   1994).

14   I. Plaintiff's Initial Placement in Administrative Segregation

15        In plaintiff's amended complaint, he alleges as follows. On June 13, 2008, defendants

16   Brackett and St. Andre authored a CDC-114-D Administrative Unit Placement Notice, stating

17   that plaintiff would be placed in administrative segregation pending completion of an

18   investigation into his association with the BGF prison gang. (Am. Compl. at 7.) Prior to placing

19   plaintiff in administrative segregation, defendant Brackett allegedly interrogated plaintiff and

20   informed him that, despite his denials of prison gang affiliation, he was going to be validated as a

21   BGF associate. (Id.) On June 16, 2008, plaintiff received notice that prison officials had

22   scheduled him to appear before the ICC regarding his initial placement in administrative

23   segregation. (Id. at 8.) According to plaintiff, he submitted a CDC 114-D "Supplement

24   Statement and Rebuttal" to defendant Runnels. (Id.) However, when plaintiff appeared before

25   defendants Peddicord, Griffith, Vanderville, and Armoskus for his ICC review, they claimed that

26   they had not received the "Supplement Statement and Rebuttal." (Id.) Plaintiff asserts that the

27   defendants also refused to accept a second copy of the rebuttal that plaintiff attempted to submit

28   and instead determined that plaintiff presented an immediate threat to the safety and security of

9

1   the institution and retained him in administrative segregation pending the investigation into his

2   membership with the BGF prison gang.  (Id. at 8-9.)  Plaintiff claims that defendants Brackett, St.

3   Andre, Runnels, Peddicord, Griffith, Vanderville, and Armoskus violated his due process right to

4   present his views in connection with his initial placement in administrative segregation.  (Id. at

5   21-23 & 26.)

6        The United States Supreme Court has held that the procedural protections guaranteed by

7   the Fourteenth Amendment Due Process Clause apply when a constitutionally protected liberty or

8   property interest is at stake.  See Wilkinson v. Austin, 545 U.S. 209, 221 (2005); see also Marsh

9   v. County of San Diego, 680 F.3d 1148, 1155 (9th Cir. 2012) ("Once a state creates a liberty

10  interest, it can't take it away without due process."); Brittain v. Hansen, 451 F.3d 982, 999-1000

11  (9th Cir. 2006) (those who seek to invoke procedural due process protections must establish that a

12  life, liberty, or property interest is at stake).  The Due Process Clause itself does not give

13  prisoners a liberty interest in avoiding transfer to more adverse conditions of confinement.  See

14  Meachum v. Fano, 427 U.S. 215, 225 (1976).  However, states may create liberty interests which

15  are protected by the Due Process Clause.  These circumstances generally involve a change in

16  condition of confinement that imposes an "atypical and significant hardship on the inmate in

17  relation to the ordinary incidents of prison life."  Sandin, 515 U.S. at 484.

18       In moving for summary judgment in their favor, defendants argue that plaintiff did not

19  have a protected liberty interest in avoiding his initial placement in administrative segregation

20  pending the investigation of his BGF gang affiliation/association, and therefore, he was not

21  entitled to even minimal procedural due process protections prior to that placement.  (Defs.'

22  Mem. of P. & A. at 8-9.)  This court agrees.  Based on the undisputed evidence in this case,

23  plaintiff's initial placement in administrative segregation lasted approximately three months.

24  Plaintiff has neither alleged facts, nor submitted any evidence, indicating that his initial

25  confinement in administrative segregation was prolonged or highly restrictive so as to "work a

26  major disruption in his environment", or otherwise created an "atypical and significant hardship"

27  on him in "relation to the ordinary incidents of prison life."  Sandin, 515 U.S. at 484 & 486.  See

28  also Richardson v. Runnels, 594 F.3d 666, 672-73 (9th Cir. 2010) (administrative segregation for

1   two weeks in the SHU pending a gang investigation did not constitute the deprivation of a

2   protected liberty interest); Robinson v. Gonzalez, No. CV 11-5639 DOC (JEM), 2012 WL

3   405006 at *6 (C.D. Cal. Feb. 7, 2012) (plaintiff failed to allege that his initial placement in

4   administrative segregation pending the outcome of his gang validation process constituted an

5   atypical or significant hardship); Gray v. Woodford, Civil No. 05-CV-1475 J(CAB), 2007 WL

6   2789476 at *4 (S.D. Cal. Aug. 16, 2007) (plaintiff's ninety-day stay in administrative segregation

7   pending an investigation of his possible gang activities not an "atypical and significant hardship"

8   required under Sandin), adopted in part by 2007 WL 2790588 (S.D. Cal. Sept. 25, 2007).  Absent

9   a protected liberty interest, plaintiff was not entitled to procedural due process protections during

10   this stage of his gang validation process.

11        Accordingly, the undersigned concludes that defendants are entitled to summary judgment

12   in their favor on plaintiff's Fourteenth Amendment due process claim in connection with his

13   initial placement in administrative segregation for approximately three months pending further

14   investigation.

15   II.  Plaintiff's Gang Validation

16        The court now turns to plaintiff's due process claim in connection with his actual gang

17   validation.  In his amended complaint, plaintiff alleges that on or about July 24, 2008, defendant

18   Brackett presented him with several CDC 128-B chronos and "source items" that prison officials

19   intended to submit to OCS in order to validate plaintiff as a member of the BGF prison gang.

20   (Am. Compl. at 9.)  Plaintiff alleges that on the following day he submitted a written statement

21   and rebuttal contesting the source items, but he maintains that defendants Brackett and St. Andre

22   did not meaningfully consider it.  (Id. at 10.)  Plaintiff claims that defendants Brackett and St.

23   Andre as well as defendants Fischer and Kissel with OCS deprived him of his right to due process

24   by not providing him with adequate notice and an opportunity to present his views, and by relying

25   on unreliable evidence to validate him as a BGF member.  (Am. Compl. at 21, 23 & 29.)

26        As discussed above, procedural protections guaranteed by the Fourteenth Amendment

27   Due Process Clause apply when a constitutionally protected liberty interest is at stake.  See

28   Wilkinson, 545 U.S. at 221.  In their motion for summary judgment, defendants argue that

1   plaintiff has not established a liberty interest in avoiding confinement in the SHU, and therefore,

2   he was not entitled to even minimal procedural due process protections prior to his indeterminate

3   SHU placement.  (Defs.' Mem. of P. & A. at 7-8.)  Based on the facts alleged by plaintiff (Am.

4   Compl. at 13-14) and the evidence submitted on summary judgment, this court finds defendants'

5   argument unpersuasive.  Although temporary confinement in administrative segregation typically

6   does not implicate a protected liberty interest, imposition of an indeterminate SHU term as a

7   result of a gang validation constitutes a much greater deprivation.  See Madrid, 889 F. Supp. at

8   1271  ("defendants may not confine prison gang members in the SHU, nor hold them there on

9   indeterminate terms, without providing them the quantum of procedural due process required by

10  the Constitution."); Suarez v. Cate, No. 2:12-cv-2048 KJM EFB, 2014 WL 996018 at *8 (E.D.

11  Cal. Mar. 13, 2014) (plaintiff's placement in the SHU for an indefinite term based on his gang

12  affiliation implicated a protected liberty interest such that defendants were constitutionally

13  required to provide plaintiff with certain minimal procedural due process protections); Castro v.

14  Prouty, No. 1:09–CV01763 GBC PC, 2011 WL 529493 at *3 (E.D. Cal. Feb. 3, 2011) (citing

15  Wilkinson, 545 U.S. at 223-25 and assuming that confinement in the SHU for an indeterminate

16  period implicates a protected liberty interest), aff'd, 478 Fed. App'x 449 (9th Cir. 2012).

17  Accordingly, the undersigned concludes that plaintiff had a protected liberty interest at stake in

18  avoiding an indeterminate SHU term in segregation and was entitled to certain minimal

19  procedural due process protections in connection with such confinement.

20          Turning now to the question of whether plaintiff received the minimal procedural due

21  process protections required, as an initial matter, the undersigned finds that based on the evidence

22  submitted on summary judgment and described above, the defendants have borne their initial

23  burden of demonstrating that there is no genuine issue of material fact with respect to plaintiff's

24  Fourteenth Amendment claim.  Specifically, evidence submitted by defendants in support of their

25  motion for summary judgment demonstrates that they provided plaintiff with all of the procedural

26  due process protections required.  See Toussaint, 801 F.2d at 1099 (prison officials must provide

27  the inmate with "some notice of the charges against him and an opportunity to present his views

28  to the prison official charged with deciding whether to transfer him to administrative

segregation.").  Defendants' evidence also demonstrates that plaintiff's gang validation was supported by "some evidence."  See Castro, 712 F.3d at 1307 ("Due process also requires such validations to be supported by 'some evidence.'"); Bruce, 351 F.3d at 1287 ("some evidence" standard applies to gang validations).

In light of the evidence submitted by the defendants in support of the pending motion for summary judgment, the burden shifts to plaintiff to establish the existence of a genuine issue of material fact with respect to his claim.  The undersigned has reviewed plaintiff's amended complaint and his lengthy opposition to defendants' pending motion.  On defendants' motion for summary judgment the court is required to believe plaintiff's evidence and draw all reasonable inferences from the facts before the court in plaintiff's favor.  Drawing all reasonable inferences in plaintiff's favor, the undersigned finds that plaintiff has not come forward with evidence on summary judgment suggesting that the defendants violated his right to due process when they validated him as a member of the BGF prison gang.

First, the undisputed evidence demonstrates that plaintiff received adequate notice of the gang association charge.  On June 13, 2008, defendant Brackett provided plaintiff with notice that he was going to be transferred to administrative segregation pending completion of an investigation into his affiliation or association with the BGF prison gang.  (Brackett Decl., Am. Compl. at 7.)  On July 24, 2008, defendant Brackett served plaintiff with a Validation Interview Notification and Disclosure Form specifically to inform him that an investigation had been completed into his suspected association with the BGF prison gang.  (Brackett Decl., Ex. C, Am. Compl. at 9.)  On that same day, defendant Brackett presented plaintiff with copies of the source items recovered in the investigation and considered in identifying plaintiff as a BGF member. (Brackett Decl., Ex. A, Am. Compl. at 9.)  Plaintiff signed the Notification and Disclosure Form, indicating that he had received the source items and notification of interview, and chose to utilize his twenty-four hour preparation period prior to his interview by correctional staff.  (Brackett Decl., Ex. C.)

Plaintiff contends that the notice he received was inadequate because it did not specify precisely when and why prison officials began their investigation into his alleged affiliation and

1    association with the BGF.  However, prison officials were not required to include these kinds of

2    details in their notice to satisfy due process.  See Toussaint, 801 F.2d at 1100-01 ("the due

3    process clause does not require detailed written notice of the charges."); see also Manibusan v.

4    Alameida, No. C 04-2611 JSW (PR), 2006 WL 496041 at *5 (N.D. Cal. Feb. 28, 2006) (the

5    undisputed evidence showed prisoner-plaintiff received sufficient notice because the "pieces of

6    information relied upon to validate Plaintiff as a gang member . . . were placed in his file and

7    were available to him for reviewing," along with copies of the chronos).

8          In addition, the undisputed evidence before this court on summary judgment demonstrates

9    that plaintiff had ample opportunity to present his views to the prison officials charged with

10   validating him as a BGF gang member.  As discussed above, on July 25, 2008, defendant

11   Brackett went to plaintiff's facility to interview him.  Plaintiff did not wish to provide any verbal

12   statement at that time but did provide Brackett a seven-page rebuttal statement.  (Brackett Decl.,

13   Ex. D, Clark Decl., Ex. A at 13, Am. Compl. at 10.)  Defendants St. Andre and Brackett reviewed

14   and considered plaintiff's rebuttal statement and permanently attached it to his gang validation

15   package for future review and consideration.  (Brackett Decl., St. Andre Decl.)  They then

16   forwarded plaintiff's entire gang validation package to OCS for review, consideration, and a final

17   decision.  (St. Andre Decl., Brackett Decl., Am. Compl. at 10.)  The Special Services Unit of

18   OCS consisting of defendant Fisher, defendant Kissel, and R. Marquez reviewed that package,

19   including plaintiff's rebuttal statement, and determined that all source items submitted met the

20   validation requirements.  (Fisher Decl., Exs. A-F.)

21         Plaintiff acknowledges that he had an opportunity to submit his seven-page rebuttal

22   statement to defendant Brackett.  (Clark Decl., Ex. A at 13, Am. Compl. at 10.)  However, he

23   contends that he was not provided an opportunity to meet with defendant St. Andre (the IGI), and

24   therefore did not receive a meaningful opportunity to be heard.  (Pl.'s Opp'n Mem. of P. & A. at

25   25.)  Plaintiff's argument is unavailing because it is one based purely on form over substance.

26   See Hewitt, 459 U.S. at 476 (ordinarily a written statement will accomplish the purpose of

27   presenting a prisoner's views).  Here, plaintiff never objected to giving his rebuttal statement to

28   defendant Brackett (Assistant IGI) during his interview.  Moreover, he has come forward with no

14

1    evidence on summary judgment contradicting the sworn declarations of defendants Brackett and

2    St. Andre in which they state that they reviewed and considered plaintiff's rebuttal statement

3    before they concluded that he met the criteria to be validated as a member of the BGF prison gang

4    and forwarded his gang validation package to OCS.  See, e.g., Suarez v. Cate, No. 2:12-cv-2048

5    KJM EFB P, 2014 WL 996018 at *10-11 (E.D. Cal. Mar. 13, 2014) (defendants satisfied the due

6    process requirement of providing the prisoner with an opportunity to be heard by providing the

7    plaintiff with an opportunity to submit written objections to Assistant IGI Harrison for IGI St.

8    Andre's review), adopted as modified on other grounds by 2014 WL 2745724 (E.D. Cal. June 17,

9    2014); Rios v. Tilton, No. 2:07-cv-0790 WBS KJN P, 2013 WL 4541825 at *12-13 (E.D. Cal.

10   Aug. 27, 2013) (finding both the IGI and Assistant IGI were critical decision-makers for purposes

11   of analyzing plaintiff's due process claim based on defendants' alleged denial of his right to

12   present his views), adopted by 2013 WL 6053815 (E.D. Cal. Nov. 15, 2013).  According to the

13   undisputed evidence in this case, OCS is charged with making a final determination as to whether

14   an inmate is validated as a gang member.  (Brackett Decl.)  Insofar as OCS is the critical

15   decision-maker, plaintiff has provided no evidence to contradict defendant Fisher's sworn

16   declaration that he and OCS members also reviewed and considered plaintiff's rebuttal statement

17   in considering his gang validation.

18          Finally, there was "some evidence" with "some indicia of reliability" to support plaintiff's

19   validation as a member of the BGF prison gang.  Although plaintiff claims that defendants

20   validated him based on unreliable evidence, the undisputed evidence before the court on summary

21   judgment in this case demonstrates otherwise.  Specifically, five source items supported

22   plaintiff's gang validation:  (1) plaintiff possessed an address book that contained the name,

23   telephone number, and AKA of inmate Joe Valentine, a validated BGF member; (2) plaintiff

24   possessed a photograph of Lorenzo Benton, a validated BGF member, which had a letter written

25   on the back that established plaintiff as an initiated BGF member; (3) plaintiff possessed a BGF

26   newsletter reflecting plaintiff's name and address as the recipient of the newsletter, an application

27   to "The George Jackson University Afrocentric/Panafrikan Studies Scholarship Program"

28   (recruitment material for entry into the BGF), and a typed page titled "Rise Courageous Black

1    Sistah", which focused on the rise of nations of black men (BGF's ideology) and mentioned

2    George Jackson, supreme commander of BGF; (4) plaintiff possessed a booklet with a picture of

3    George Jackson and eighteen pages of written literature related to the BGF prison gang; and (5)

4    plaintiff possessed a booklet titled "The Black Panther Party Reconsidered" indicating his

5    involvement with the BPP, which stands on the same platform as the BGF.  (Fischer Decl., Exs.

6    B-F.)

7          The Ninth Circuit has made clear that the "some evidence" review applicable here only

8    requires the court to ask "whether there is *any evidence* in the record that could support the

9    conclusion."  Castro v. Terhune, 712 F.3d 1304, 1314 (9th Cir. 2013).  In this regard, courts "do

10   not examine the entire record, independently assess witness credibility, or reweigh the evidence;

11   rather, 'the relevant question is whether there is any evidence in the record that could support the

12   conclusion.'"  Bruce, 351 F.3d at 1287 (quoting Hill, 472 U.S. at 455-56).  Here, the five source

13   items described above meet the "minimally stringent" test for "some evidence" supporting the

14   action taken by prison officials  See Castro, 712 F.3d at 1315 (inmate's possession of two pictures

15   containing gang-related symbols constituted "some evidence" that the inmate was involved with

16   the gang in question).

17         Accordingly, for all of the foregoing reasons, the undersigned concludes that defendants

18   are entitled to summary judgment in their favor with respect to plaintiff's Fourteenth Amendment

19   due process claim in which he challenges his gang validation.

20   III.  Plaintiff's Subsequent Review

21         The court now turns to plaintiff's due process claim challenging what he characterizes as

22   the "subsequent review" of his gang validation.  In his complaint, plaintiff alleges that on October

23   2, 2008, he appeared before the ICC and attempted to submit a written statement and rebuttal

24   against his validation as a member of the BGF prison gang.  (Am. Compl. at 11.)  Plaintiff alleges

25   that defendants Perez, Peddicord, Cochrane, Kots, St. Andre, and Runnels refused to accept

26   plaintiff's rebuttal and informed him he was going to the SHU.  (Id. at 12.)  Plaintiff claims that

27   in doing so defendants denied him his right to due process by not providing him with an

28   opportunity to present his views.

1    For the reasons described above, the undersigned finds that plaintiff had a protected

2    liberty interest at stake in avoiding an indeterminate SHU term.  Turning now to the question of

3    whether plaintiff received the minimal procedural due process protections required, as an initial

4    matter the undersigned finds that based on the evidence submitted on summary judgment and

5    described above, the defendants have borne their initial burden of demonstrating that there is no

6    genuine issue of material fact with respect to plaintiff's Fourteenth Amendment claim based on

7    the subsequent review of his validation.  Specifically, evidence submitted by defendants in

8    support of their motion for summary judgment demonstrates that the ICC defendants provided

9    plaintiff with ample opportunity to present his views on the subject.  See Toussaint, 801 F.2d at

10   1099.

11    In light of the evidence submitted by the defendants in support of the pending motion for

12   summary judgment, the burden shifts to plaintiff to establish the existence of a genuine issue of

13   material fact with respect to his due process claim.  The undersigned has reviewed plaintiff's

14   amended complaint and his opposition to defendants' pending motion.  As noted above, in

15   considering defendants' motion the court is required to believe plaintiff's evidence and draw all

16   reasonable inferences from the evidence before the court in plaintiff's favor.  Drawing all such

17   reasonable inferences in plaintiff's favor, the undersigned finds that plaintiff has not come

18   forward with any evidence suggesting that defendants violated his right to procedural due process

19   in connection with the subsequent review of his gang validation.

20    Specifically, the undisputed evidence demonstrates that plaintiff had ample opportunity to

21   present his views to the ICC defendants at his subsequent review.  On October 2, 2008, the ICC

22   reviewed Forms 812A and 128B and noted that plaintiff had been validated as a BGF associate.

23   (Kots Decl., Ex. A.)[1]  Plaintiff has not offered any evidence to contradict defendants' sworn

24   declarations that they reviewed and considered his rebuttal statement in connection with the

25   subsequent review.  Moreover, even if plaintiff attempted to submit a second rebuttal statement to

26

27   _____
[1] A CDCR 812A is a Notice of Critical Information – Prison Gang Identification Form and the
128B in this circumstance is the gang validation package, including in this case plaintiff's seven-

28   page rebuttal statement.  (Kots Decl., St. Andre Decl.)

1  the ICC but defendants refused to accept it, the undersigned still finds that defendants provided

2  plaintiff with ample opportunity to be heard.  In fact, plaintiff's own account of what took place

3  during his ICC review as written in his administrative appeal challenging his gang validation

4  demonstrates exactly that.

5  In his administrative appeal, plaintiff devoted a hand-written page to "VIOLATIONS

6  THAT OCCURRED @ OCT. 2nd, 2008 ICC/UCC REVIEW."  (Clark Decl., Ex. A at 12.)

7  There, plaintiff explained that during his "subsequent review" he made the committee and

8  counselor aware of the violations that he believed had taken place in connection with his gang

9  validation.  (Id.)  He also recounted the verbal exchange that had taken place with the ICC

10  regarding his gang status, the evidence of his "gang activity," the content of his validation chrono,

11  the applicability of the "Castillo Settlement" agreement, and so on.  (Id.)  Thus, the undisputed

12  evidence before this court on summary judgment in this case demonstrates that defendants

13  provided plaintiff with ample opportunity to present his views at the subsequent review of his

14  gang validation on October 2, 2008.[2]

---

15  [2]  Some district courts have concluded that the IGI and not the ICC is the critical decision-maker
16  responsible for a prisoner's transfer to the SHU based upon a gang validation.  Compare Perez v.
    Woodford, No. CV-1-06-610-MHM, 2010 WL 3943536 at *7 (E.D. Cal. Oct. 1, 2010) ("In the
17  case of administrative segregation founded upon positive gang validation, the official charged
    with deciding whether to transfer or retain an inmate in administrative segregation is the IGI."),
18  with Stewart, 418 F. Supp. 2d at 1165 (N.D. Cal. 2006) (the prisoner-plaintiff found to be entitled
19  to "informal nonadversary hearing" before the ICC prior to its decision to retain him in SHU
    based on gang validation); Guizar v. Woodford, No. C 05-0557 MMC (PR), 2007 WL 951294 at
20  *5 (N.D. Cal. Mar. 27, 2007) (prison officials "charged with deciding" whether to retain plaintiff
    in administrative segregation and send him to the SHU indefinitely based on his gang validation
21  were the ICC officials present at hearings), aff'd in part, rev'd in part on other grounds by, 282
22  Fed. Appx. 551, 2008 WL 2403000 (9th Cir. June 11, 2008).  See also Lopez v. Cook, No. CIV-
    S-03-1605 KJM DAD P, 2011 WL 2493787 at *3 (E.D. Cal. June 22, 2011) (prisoner-plaintiff's
23  reliance on cases where the critical decision-maker was found to be the IGI was misplaced
    because those cases were based on experiences at other prisons), aff'd in part, rev'd in part 533
24  Fed. Appx. 763 (9th Cir. 2013).  As discussed above, however, the undisputed evidence here
    establishes that the ICC was the critical decision-maker in this case since that committee made the
25  final decision prior to a plaintiff's transfer to the SHU.  Moreover, even if defendant St. Andre
    was the critical decision-maker in plaintiff's transfer to the SHU, as discussed above in
26  connection with plaintiff's gang validation, St. Andre also provided plaintiff with an adequate
27  opportunity to be heard.  See Madrid, 889 F. Supp. at 1276 ("When we consider the opportunities
    for hearing before the IGI and the ICC together, and the record as a whole, we decline to find that
28  the process provided to the class is no more than a meaningless gesture.").

1    Accordingly, the undersigned concludes that defendants are entitled to summary judgment

2    in their favor on plaintiff's Fourteenth Amendment due process claim in connection with the

3    "subsequent review" of his gang validation before the ICC. [3]

4    IV.   Plaintiff's Equal Protection Claims

5    In his complaint, plaintiff alleges that defendants discriminated against him on the basis of

6    his race when they validated him as a member of the BGF prison gang.  (Am. Compl. at 18-20.)

7    Specifically, plaintiff maintains that defendants use reading materials, books, innocuous inmate

8    associations, political and grass-roots community-related articles, and more as source items to

9    validate African American inmates but do not use the same types of items to validate inmates

10   belonging to other racial groups.  (Id. at 18-20.)  Defendants have moved for summary judgment

11   in their favor on plaintiff's equal protection claim, arguing that plaintiff's allegations fails to state

12   a cognizable equal protection claim as a matter of law.  (Defs.' Mem. of P. & A. at 13-14.)  The

13   undersigned finds defendants' argument in this regard to be persuasive.

14   The Supreme Court has held that the Equal Protection Clause "is essentially a direction

15   that all persons similarly situated should be treated alike."  City of Cleburne, Tex. v. Cleburne

16   Living Center, 473 U.S. 432, 439 (1985).  "Prisoners are protected under the Equal Protection

17   Clause of the Fourteenth Amendment from invidious discrimination based on race."  Wolff v.

18   McDonnell, 418 U.S. 539, 556 (1974).  To state a cognizable claim under the Equal Protection

19   Clause, a prisoner "must plead intentional unlawful discrimination or allege facts that are at least

20

21   [3] Insofar as plaintiff claims that he was not provided with meaningful periodic review of his SHU
     placement during its duration, the undersigned finds such claims to also lack merit.  According to

22   plaintiff's sworn deposition testimony, he received 180-day reviews and annual reviews of his
     SHU placement.  (Pl.'s Dep. at 60.)  Plaintiff attended all of the hearings over a period of six

23   years, except for one in connection with which he submitted a written statement for review by the
     ICC.  (Id. at 61.)  Plaintiff has come forward at summary judgment with absolutely no evidence

24   suggesting that these periodic reviews were meaningless gestures.  See Toussaint, 801 F.2d at
     1102; Harrison v. McGrath, No. C 02-1924 SI, 2004 WL 1465698 at *7 (N.D. Cal. June 21,

25   2004) (plaintiff-prisoner had not met his burden of production of evidence to support his
     argument that defendants denied him meaningful review because his argument merely reiterated

26   his complaint); see also F.T.C. v. Publ'g Clearing House, Inc., 104 F.3d 1168, 1171 (9th Cir.
     1997) (a conclusory affidavit, lacking detailed facts and supporting evidence, does not create a

27   genuine issue of material fact on summary judgment).  Accordingly, defendants are entitled to
     summary judgment in their favor on any claims such as these as well.

28

1   susceptible of an inference of discriminatory intent." <u>Monteiro v. Tempe Union High School</u>

2   <u>District</u>, 158 F.3d 1022, 1026 (9th Cir. 1998). "Intentional discrimination means that a defendant

3   acted at least in part *because of* a plaintiff's protected status." <u>Serrano v. Francis</u>, 345 F.3d 1071,

4   1082 (9th Cir. 2003) (emphasis in original) (quoting <u>Maynard v. City of San Jose</u>, 37 F.3d 1396,

5   1404 (9th Cir. 1994)).

6          In this case, plaintiff has not alleged any facts in support of his contention that defendants

7   discriminated against him by validating him as a member of the BGF prison gang. Specifically,

8   plaintiff has not alleged any facts indicating that defendants intentionally treated him differently

9   from a "similarly situated" inmate based on his race. <u>See</u> <u>Nordlinger v. Hahn</u>, 505 U.S. 1, 10

10  (1992) ("Similarly situated" persons are those "who are in all relevant respects alike."). Vague

11  and conclusory allegations concerning the involvement of official personnel in civil rights

12  violations are not sufficient. <u>See</u> <u>Ivey v. Board of Regents</u>, 673 F.2d 266, 268 (9th Cir. 1982).

13  Moreover, regardless of the nature of his allegations with respect to this claim, plaintiff has

14  certainly not come forward on summary judgment with any evidence suggesting that his right to

15  equal protection under the law was violated by defendants.

16         Accordingly, the undersigned concludes that defendants are also entitled to summary

17  judgment in their favor on plaintiff's equal protection claims.

18  V.   <u>Plaintiff's Official Capacity Claims</u>

19         In his complaint, plaintiff has sued defendants in their individual and official capacities.

20  (Am. Compl. at 3-6.) Defendants have moved for summary judgment on plaintiff's official

21  capacity claims for damages, persuasively arguing that they are immune from suit under the

22  Eleventh Amendment. (Defs.' Mem. of P. & A. at 14.) As the Supreme Court has recognized:

23                [A] suit against a state official in his or her official capacity is not a
                  suit against the official but rather is a suit against the official's
24                office. As such, it is no different from a suit against the State itself.

25  <u>Will v. Mich. Dep't of State Police</u>, 491 U.S. 58, 71 (1989)

26         In the absence of a waiver by the state or a valid congressional override, under the

27  Eleventh Amendment, state agencies are immune from private causes of action for damages

28  brought in federal court. <u>See</u> <u>Dittman v. California</u>, 191 F.3d 1020, 1025–26 (9th Cir. 1999).

1   The State of California has not waived immunity under the Eleventh Amendment for claims

2   brought against it under § 1983.  Id.  In addition, the Supreme Court has held that Congress did

3   not intend for § 1983 to abrogate a state's Eleventh Amendment immunity.  Id.

4       Accordingly, the undersigned concludes that defendants are entitled to summary judgment

5   in their favor with respect to plaintiff's official capacity claims for damages.

6   VI.  Castillo Settlement Agreement

7       In his complaint, plaintiff also alleges that defendants have failed to comply with the

8   procedures the state agreed to in the settlement agreement reached in Castillo v. Terhune, No. C

9   94-2847 MJJ JCS (N.D. Cal. 1994).[4]  (Am. Compl. at 10-12.)  Defendants have moved for

10  summary judgment on this claim, arguing that plaintiff fails to state a cognizable claim for relief.

11  (Defs.' Mem. of P. & A. at 12.)  The undersigned finds defendants' argument in this regard to be

12  persuasive as well.  See, e.g., Carranza v. Lewis, No. C 13-3337 YGR (PR), 2014 WL 2944082 at

13  *5 (N.D. Cal. June 30, 2014) ("The [Castillo] settlement agreement (the existence of which the

14  Court can take judicial notice) does not provide a basis for a section 1983 claim for relief because

15  it is not a determination that there was any constitutional violation in the active/inactive review

16  process and, even if it did, a settlement agreement does not provide a right secured by the

17  Constitution or laws of the United States, the violation of which is a necessary element of a

18  section 1983 claim."); Suarez v. Cate, No. 2:12-cv-2048 KJM EFB P, 2014 WL 996018 at *17

19  (E.D. Cal. Mar. 13, 2014) (plaintiff's claims based on prison officials' alleged failure to comply

20  with the procedures agreed to in Castillo failed as a matter of law because "[t]he violation of

21  consent decrees, settlements, or injunctions in other cases does not provide liability in this

22  action," and the Castillo settlement agreement itself "'provides that alleged noncompliance with

23  the agreement cannot be the basis for granting an individual inmate relief regarding his gang

24  validation.' Garcia v. Stewart, No. C 06–6735 MMC (PR), 2009 WL 688887 *7 (N.D. Cal.

25  /////

26  ────────────────────

[4]  The settlement agreement in Castillo placed limitations on the items that could be used as
27  source items, along with other changes to CDCR's gang validation procedures.  See Ruiz v.
Fischer, No. C 07-326 MHP, 2010 WL 4807052, at *3 (N.D. Cal. Nov. 18, 2010); Manibusan v.
28  Alameida, No. C 04-2611 JSW (PR), 2006 WL 496041, at *6 (N.D. Cal. Feb. 28, 2006).

1    Mar.16, 2009) (citing Settlement Agreement § 30c).").  Plaintiff's case is no different in this

2    regard from those presented in <u>Carranza</u> and <u>Suarez</u> cited above.

3          Accordingly, the undersigned concludes that defendants are also entitled to summary

4    judgment in their favor on plaintiff's claims brought pursuant to the <u>Castillo</u> settlement

5    agreement.

6          In sum, for all of the foregoing reasons, the undersigned will recommend that defendants'

7    motion for summary judgment be granted as to plaintiff's Fourteenth Amendment due process

8    claim in connection with his initial placement in administrative segregation, his gang validation,

9    and the subsequent review of plaintiff's gang validation and placement in the SHU.  The

10   undersigned will further recommend that defendants' motion for summary judgment be granted

11   with respect to plaintiff's equal protection claims, any damages claims brought against defendants

12   in their official capacity, and any claims brought by plaintiff pursuant to the <u>Castillo</u> agreement

13   because plaintiff's allegations with respect to these claims fail to state a cognizable claim for

14   relief.[5]

15                                    **CONCLUSION**

16          Accordingly, IT IS HEREBY RECOMMENDED that:

17          1.  Defendants' motion for summary judgment (Doc. No. 28) be granted; and

18          2.  This action be closed.

19          These findings and recommendations are submitted to the United States District Judge

20   assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

21   after being served with these findings and recommendations, any party may file written

22   objections with the court and serve a copy on all parties.  Such a document should be captioned

23   "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the

24   objections shall be filed and served within seven days after service of the objections.  The parties

25   /////

26

27   _____
     [5] In light of this recommendation, the undersigned declines to address defendants' alternative
     argument that they are entitled to summary judgment in their favor based on the affirmative
28   defense of qualified immunity.

1   are advised that failure to file objections within the specified time may waive the right to appeal

2   the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

3   Dated:  September 26, 2015

4

5   _____
    DALE A. DROZD

6   UNITED STATES MAGISTRATE JUDGE

    DAD:9
7   payn0243.57(2)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28